CAMDEN FIRE INS. ASS'N *v.* NEW BUENA VISTA HOTEL CO.

(In Banc. Feb. 25, 1946. Suggestion of Error Overruled May 13, 1946.)

[24 So. (2d) 848. No. 36063.]

(In Banc.  May 13, 1946.)
[26 So. (2d) 174.  No. 36063.]

Wallace & Greaves, of Gulfport, for appellant.

**White & Morse**, of Gulfport, for appellee.

592

White & Morse, of Gulfport, and Flowers, Brown & Hester and Robert Burns, of Jackson, for appellee, on suggestion of error.

Argued orally by **R. A. Wallace**, for appellant, and by **S. E. Morse**, for appellee.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

This is an appeal from the Circuit Court of Harrison County. The errors assigned are the refusal by the court, at the end of all testimony, to grant a peremptory instruction for the defendant, and the granting of one for the plaintiff. Judgment was entered accordingly for the plaintiff on the verdict of the jury, pursuant to such instruction.

On June 1, 1942, appellee secured from appellant an insurance contract on the standard fire insurance form of policy. The policy contained this clause: "Permission granted during the life of this policy to employ mechanics to make alterations or repairs, and this policy (so far as it applies to the building being altered or repaired) shall also cover in accordance with its conditions all such alterations, materials and supplies therefor, therein or adjacent thereto, but this permission shall not be held to include the reconstruction or the enlargement of any sprinklered or fire resistive building, described in this policy. This permission does not waive or modify any of the terms or conditions of the automatic sprinkler clause attached to this policy."

A rider termed "Extended Coverage Endorsement" extended the fire insurance policy to "include direct loss or damage by windstorm, cyclone, and tornado" and other perils therein listed. However, as a stipulation, limitation and condition upon liability under this extended coverage, the rider contained the following: "This Company shall not be liable for any loss or damage . . . *caused by water or rain, whether driven by wind or not, unless the building insured, or containing the property insured, shall first sustain an actual damage to the roof or walls by the direct force of the wind,* and shall then be liable only for such damage to the interior of the building

or the insured property therein, as may be caused by water or rain entering the building through openings in the roof or walls made by the direct action of the wind, or by water from sprinkler or other piping broken by such damage to roof or walls.'' (Italics ours.)

The issue in the case largely revolves around what relation, if any, these provisions in the policy and in the rider-endorsement bear to each other, and the interpretation of the contract with reference thereto as applied to the facts in the case. In its declaration, appellee charges "On May 25, 1944, the roof of the property *so insured* was damaged and torn loose by the force of the wind, causing water and rain to go through the roof because of such damage by the action of the wind, thereby damaging the property insured." (Italics ours.)

The roof mentioned in the declaration was on top of a four-story wing of a building operated as a hotel by appellee, and was a composition roof composed of two layers of felt with pitch on top of the upper layer of the two, followed by three more layers of felt coated with pitch on the uppermost, making four layers of pitch and five layers of felt, with an outside covering of gravel. Appellee had contracted with a certain roofing firm to repair a section of this roof, and on the morning of the day of the events, which dawned clear and bright, workmen had, by means of axes cut an opening through all these layers of the roof down to its base of tongue and groove pine laid on the rafters, thereby opening up a hole in the roof, 12 x 46 feet. While engaged in these repairs, a storm appeared on the horizon, approaching with great rapidity, hurling both wind and rain, as it neared, and upon the roof when it reached the scene of operations. When the storm was first observed, two layers of felt, nailed but uncemented by pitch, had been laid on half of this opening made by the workmen, and during its approach the workmen hastily sought to cover the other six feet of the opening by rolling felt across it and attempting to nail it, and even casting themselves upon it,

seeking to hold it against the wind and rain. Through this opening thus made and so sought to be sealed, the water poured into the interior of the hotel and caused the damage for which suit was brought. Owing to the force of the wind and the speed of the progress of the storm to the scene, and the beating of the rain, these efforts of the workmen were ineffectual to accomplish their purpose.

It seems to be the position of appellee that since the policy itself, which is a contract of insurance against fire, contains a clause therein permitting repairs, and the loss occurred during the progress of such repairs, appellee is entitled to recover. If such recovery were sought here for damage by fire under the policy, we would concede the plausibility of the argument, but since that issue is not involved, we are not to be taken as deciding it. Here, however, we have a demand for damage due to windstorm by virtue of an extension of the original contract liability of the policy. This extension embraced in the rider, supra, attached to the policy, contains its own terms and conditions for liability for loss due to the action of windstorms. Such riders are attached to insurance policies for the purpose of limiting or extending the terms of the policy, of modifying or changing the policy, and are therefore amendments and alterations and create a difference. The condition here is: ''This Company shall not be liable for any loss or damage caused by . . . water or rain, whether driven by wind or not, unless the building insured, or containing the property insured, *shall first sustain an actual damage to the roof or walls by the direct force of the wind,* and shall then be liable only for such damage to the interior of the building or the insured property therein, as may be caused by *water or rain entering the building through openings in the roof or walls made by the direct action of the wind.*'' (Italics ours.) Conceding, but not deciding, for the purpose of the discussion, that a building being repaired could conceivably be damaged by wind-

storm independently of and not inherently due to such repairs and that an assured would be entitled to collect for windstorm damage otherwise to the property, it must, however, be borne in mind that we have no such situation under the circumstances of this case. The repairmen opened up the hole in the roof here,—not the windstorm. The water entered the interior of the building through the opening made by these workmen, who, despite desperate efforts by makeshift and temporary expedients, could not close this aperture in time to prevent the entrance of water. The roofing the workmen unrolled on the area opened by them, at least on half of it, and on which they cast themselves in order to hold it down, and which they attempted to fasten with nails during the storm so as to seal out the water, was not a roof. This effort was an emergent measure, ineffective against the wind and water, so that the water poured through the opening notwithstanding such exertions to exclude it. There was no intention that this felt thus sought to be used as a cover for at least half of the exposed gap in the roof would be left that way, after the storm passed, as a roof, or that the workmen would thereafter continue to lay prone upon it as an anchorage to the pine base beneath the felt and to the rest of the established roof not affected by repairs. Hence, it was not a roof blown off by the direct action of the wind, but, as stated, only a presently emergent effort to stop a hole by the men who made it, and the only participation of the wind was to furstrate such futile attempts,—certainly not the creation of an opening by direct action of the wind on the roof. This situation did not constitute a roof, and was not intended to be a roof, such as the policy contemplated.

To be, or become, a roof, its construction or reconstruction must have reached the point where a reasonably prudent householder would consider it, if left in that condition for a month or months, or longer, as adequate against all risks of wind and rain which could be reasonably anticipated as likely to happen according to

the general and recurrent experiences of the past,—but not including any extraordinary or unprecedented eventuality. Would any prudent householder have so considered a roof, nearly flat, at all adequate, when it had only two layers of felt nailed down without any tar or other adhesive material to cement it? It would seem that among reasonable men this question could have but one answer and that in the negative. Such a so-called roof would not be a roof, but only a part thereof, as are the rafters, or the sheeting on the rafters.

The situation, when the storm approached, was, as stated, supra, that of the 12 x 46 space opened by the workmen in the permanent hotel roof, one-half had been covered by only two strips of uncemented felt, constituting just so much progress toward restoration of a complete, adequate rain and wind resistant roof of five such strips successively atop each other, and the topmost three cemented compactly, as well as all five nailed down and finally coated with gravel, and was insufficient to bring the restored or repaired part up to the quality and grade of the remainder of the roof. The other half, when the storm was first observed, was bare to its pine board base, and in the face of the rising menace of the approaching storm, the workmen feverishly and hastily stretched some felt across it, seeking to nail it, and casting themselves bodily upon it, in the teeth of the roaring gale and torrential rain of the tempest. This latter sort of covering is unmistakably what appellee's witness Weaver meant, with reference, at least, to half of it, when he said it was "all covered," when considered in connection with his entire testimony, and hence this statement cannot be of much evidential value, especially when compared with the remainder of his statements, so favorable to appellant.

We do not think that appellee's contention with reference to the repair clause, supra, can prevail in this case because of the facts shown above, and for the further reason that being a part of the policy itself it is

subordinate to the provisions of the rider. It is not an exception to the rider, but the rider itself is a specific and controlling provision dealing with a different liability, and prevails over the terms and conditions of the policy. Since the rider is presumed to have expressed the exact agreement of the parties; it controls the policy insofar as it enlarges, modifies or restricts the terms thereof, as it is a specific statement relating to the subject involved. Morris v. American Liability & Surety Company, 322 Pa. 91, 185 A. 201. It is said that where a rider is attached to printed forms of general use, and is intended to apply most specifically to the condition of the parties named in the policy, the rider has a predominating influence in determining the meaning and intent of the policy. Rice Oil Company, et al. v. Atlas Assurance Company, Ltd., 9 Cir., 102 F. (2d) 561. The rule laid down in Corpus Juris Secundum is that where the provisions in the policy proper and those in the rider are in conflict, the rider controls in construing the contract expressly where the provisions of the rider are the most specific. 44 C. J. S., Insurance, section 300, p. 1208. See also 29 Am. Jur., sec. 162, to the effect that the provisions of a policy and a rider, which is a part thereof, should be harmonized if possible, but if in conflict, the rider should control, especially where the provision in the rider is more specific. In the case of North River Insurance Company v. Clark, 9 Cir., 80 F. (2d) 202, 204, reversing Clark v. North River Insurance Company, D. C., 8 F. Supp. 394, it is held that the reason for the rule is that additions to a policy by a rider are actually for the purpose of modifying the general terms of the policy, and therefore, being specific, control the more general terms of the policy. So, here, appellee was bound by the terms of the rider.

Three cases have been cited involving the rider contained in the contract before us. A case cited by appellee, National Union Fire Insurance Company v. Harrower, 170 Ark. 694, 280 S. W. 656, containing the same provisions of the rider here, involved a severe windstorm

which practically tore the roof from a building, and within a very few minutes a heavy rain began which entered the building of the roof so damaged by the wind. The defense of the insurance company was that the wind was insufficient to have made the damage and that it was caused by accompanying hail beating on it. No one was repairing the building at the time. That case is not in point here on its own facts. Appellant cited two cases containing the clause under discussion. In the first one, Newark Trust Company, et al. v. Agricultural Insurance Company, 3 Cir., 237 F. 788, 791, the court said: "The plaintiffs' case rests upon their ability to take the cause of damage out of the clause of the policy exempting the company from liability, and place it in the clause imposing liability. . . . This clause, disclaiming liability, is as much a part of the contract as the clause assuming liability, and it must be considered in connection with all other expressions in seeking the sense and the scope of a contract." And, the building insured was a frame dwelling built on a brick foundation, standing close to the ocean. The front of the foundation broke during a windstorm, causing the house to go down pursuant to a driving tide against it. The court held that the injury was plainly excluded from the terms of the policy, it being caused by water, though driven by the wind, instead of by the direct force of the wind. The other case cited by appellant involving the clause here, Coyle et al. v. Palatine Insurance Company, Ltd., Tex Com. App., 222 S. W. 973, holds that a policy insuring against damage by tornado, windstorm or cyclone, expressly excepting damage caused by water or rain, whether driven by wind or not, covered only losses resulting from wind and no other cause, and having stipulated it was impossible to determine to what extent wind and water were factors in causing a loss, it was excluded from indemnity provided.

Under the terms of the rider, since the original roof did not first sustain actual damage by the direct force of the wind, and the repairs had not progressed far enough

to restore the displaced parts or to come within the definition of roof, supra, on this occasion, it is immaterial whether the rain were driven by the wind or not, especially since the opening was made by the workmen and not by the direct force of the wind.

The language of this rider, in our judgment, is plain and clear and contains no ambiguity, but the court possibly ascribed excessive importance and power to the permit for repairs in the policy, instead of permitting the conditions of liability in the rider to predominate in the construction of the contract, hence overruling the motion of appellant for a peremptory instruction in its behalf, and sustaining the motion of appellee for one in its favor. In our judgment, in view of what we have said above, we are of the opinion that the trial court erred in both instances. It follows, therefore, that the jury should have been instructed peremptorily to find for the appellant. In absence thereof, we are constrained to reverse the judgment there and render one here for appellant.

Reversed, and judgment here for appellant.

**Roberds, J.,** delivered the opinion of the Court on suggestion of error.

Appellee, in its suggestion of error, urges that the proof shows that when the wind came the workmen had placed two layers of dry felt, entirely or partly nailed down, over the entire opening previously made by them, or, at least, that the question of physical fact in this regard was for decision by the jury. Conceding the physical facts to be as contended by appellee, still that was not the kind of roof covered by the policy. The undisputed proof is that while a roof may consist of one to five piles of felt, depending on the time it is expected to last, yet, in each case, to be a completed roof, there must be a coat of tar between each two-ply, if the roof consists of more than one layer, and in all cases, regardless of the number

of layers, there must be a coat of tar and gravel properly applied to the top layer. It is not contended by appellee that any tar had been placed between the two plies of dry felt which it claims the workmen had been able to lay on the opening, nor is it contended any tar or gravel had been placed on the top layer thereof. However, a careful review of the evidence convinces us that the original opinion correctly stated the facts.

Suggestion of error overruled.

### DISSENTING OPINION.

**McGehee, J.,** delivered a dissenting opinion.

I do not think that there should have been a peremptory instruction granted either on behalf of the plaintiff or the defendant, but that there should have been submitted to the jury the question of fact as to whether or not the two layers of felt which had been nailed down on the entire strip, twelve feet in width and forty feet long, to replace the old roofing, and some of which was torn up by the direct force of the wind prior to the rain, would have been sufficient, except for the action of the wind, to turn the rain and prevent the damage to the property sued for.

As I understand the testimony the wind tore off some of the felt on the six foot strip first nailed down as well as on the last six foot strip, and since the witnesses testified that the two layers of felt had been nailed down on the first strip when they saw the cloud approaching and that they hastened to cover the remaining six foot strip and nailed it down before the wind came, it would seem to me that the jury should have been permitted to say whether or not the testimony of the witnesses was true to the effect that the two layers would have been sufficient to have protected the property from damage on account of the rain, except for the fact that the roofing was torn by the direct force of the wind before the rain began to

fall. The testimony discloses that the number of layers of felt usually put down for a roof depends upon whether the owner of the property desires a five, ten, fifteen or twenty year roof on his building. And I am, therefore, of the opinion that the case should have been reversed and remanded instead of there being a judgment for the appellant here.