359 So.2d 52 (1978)
NEW HAMPSHIRE INSURANCE COMPANY, Appellant,
v.
Paul CARTER, Jr., and Bertha Lee Carter, Appellee.
No. JJ-4.
District Court of Appeal of Florida, First District.
June 6, 1978.
*53 Charles A. Schuster of Fisher & Bell, Pensacola, for appellant.
Eric C. Eggen, Pensacola, for appellee.
BOYER, Judge.
By this interlocutory appeal appellant New Hampshire Insurance Company (hereinafter New Hampshire), seeks review of a summary final judgment on the issue of coverage, and therefore liability.
Appellees (hereinafter Carter) filed an action in the trial court against New Hampshire, alleging that New Hampshire issued to them a policy of insurance insuring a certain dwelling house owned by them, the contents therein and other related coverage. It was further alleged that on September 4, 1976 they sustained damage and loss to the covered dwelling within the coverage of the policy, resulting in damage to unscheduled personal property located in the dwelling and additional living expenses. A determination of coverage was sought under the provisions of the policy. New Hampshire answered, admitting the issuance and existence of the policy but denied that the damage to the unscheduled personal property was caused by a named peril, contending therefore that the loss was not compensable under the terms of the policy. The Carters filed a motion for summary judgment on the issue of coverage and in support thereof filed an affidavit by Mrs. Carter to the effect that on September 4, 1976 she and her husband, with the assistance of others, had removed the shingles from the roof of the subject dwelling and had partly covered the wood decking with tar paper in anticipation of placing new roofing materials on the roof when a rain storm occurred. As the rain storm progressed tar paper was applied to the remainder of the roof, but the water leaked under the tar paper and through the wood decking resulting in damage to the dwelling and its contents. New Hampshire also filed a motion for summary judgment on the issue of coverage based upon Carters' complaint, the terms of the policy and Mrs. Carter's affidavit. Following a hearing the learned trial judge indicated an intention to grant Carters' motion on the ground that the policy contemplated that the insured would make repairs. An order of partial summary judgment on the issue of coverage was entered, thus this appeal.
It is clear that Carter was afforded standard homeowner's insurance coverage to their dwelling and contents and that the dwelling and contents was damaged on September 4, 1976 when a rain storm occurred while the plaintiffs were reroofing the dwelling. New Hampshire paid all damages to the dwelling since the dwelling was insured against all risks, but denied coverage for the unscheduled personal property on the asserted ground that no named peril was involved in the loss.
The homeowner's policy issued to the Carters states under the heading PERILS INSURED AGAINST that the policy insures under: COVERAGE C  "Unscheduled Personal Property" against direct loss to the property covered by the following perils as defined and limited, except as otherwise excluded:
3. WINDSTORM OR HAIL, Excluding Loss:
b. caused by rain, snow, sand or dust, all whether driven by wind or not, unless the building containing the property covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail and then this Company shall be liable for loss to the property covered therein caused by rain, snow, sand or dust entering the building through openings in the roof or walls made by direct action of wind or hail.
There is no allegation in the complaint nor in the Carter affidavit that the subject dwelling sustained any actual damage to the roof or walls made by direct action of wind or hail. In fact, the affidavit indicates that the rain leaked through the roof solely because the Carters had removed the protective covering of the shingles. *54 Under the terms of the exclusion unless there was actual prior damage to the roof or walls occasioned by wind or hail no loss to unscheduled personal property caused by rain is covered.
It is axiomatic that parties sui juris are bound by their valid contracts and that where a particular risk is expressly and clearly excepted from the risks assumed by an insurer, the courts are without authority to enforce indemnity for losses resulting from such excepted risks. The exclusionary clause marks the boundary of the coverage of the policy and the courts will not hold the insurer to the coverage of risks which it has expressly excluded. (18 Fla.Jr., Insurance § 409; Travelers' Ins. Co. v. Peake, 82 Fla. 128, 89 So. 418 (1921)).
The Supreme Court of Mississippi addressed itself to a similar factual situation in Camden Fire Insurance Assoc. v. New Buena Vista Hotel Co., 199 Miss. 585, 24 So.2d 848 (1946). In that case workers were replacing the roof on a hotel and had stripped the shingles from the roof leaving only the exposed wood decking. Approximately one-half of the roof had been covered with tar paper when a rain storm appeared on the horizon. The workmen hurriedly attempted to cover the remainder of the roof but the rain leaked through the tar paper and decking, damaging the hotel. The insurance policy contained a rider covering windstorm damage which stated:
"This company shall not be liable for any loss or damage ... caused by water or rain, whether driven by wind or not, unless the building insured ... shall first sustain an actual damage to the roof or walls by the direct force of the wind, and shall then be liable only for such damage to the interior of the building or the insured property therein, as may be caused by water or rain entering the building through openings in the roof or walls made by the direct action of the wind."
Under those circumstances the Mississippi court reversed the finding of coverage because, among other reasons, the policy unambiguously stated that the roof must first sustain actual damage by the direct force of wind. That clearly was not the case, as the repairmen, not the windstorm, had opened the hole in the roof. Further, the court questioned whether, under those circumstances, the hotel had a roof at all within the contemplation of the policy because, in order to be a roof, the court observed, its construction must have reached a point where a reasonably prudent householder would consider it adequate against the risks of wind and rain which could be reasonably anticipated. (For a different holding, however, under a similar factual situation, see the Oklahoma case of Homestead Fire Insurance Company v. DeWitt, 206 Okla. 570, 245 P.2d 92 (1952)).
The Carters contend that since the policy allowed them to repair their dwelling it necessarily contemplated the process of repair, including any increased risk attendant upon the dwelling being in a state of repair. However, the fact that a policy contains a clause granting permission to the insured to make repairs does not vitiate the clear and unambiguous terms of the policy. Making repairs is a normal exercise of the ordinary incidence of ownership over insured premises. It is reasonable to presume that the parties contemplated such acts and did not intend the making of repairs to violate the conditions of the policy. It is not reasonable to presume that the parties intended that the coverage provided against loss from certain limited risks would be expanded to provide coverage against any and all risks merely by the act of the insured making repairs.
The subject policy provides coverage for personal property damage caused by windstorm but specifically excludes damage by rain unless the rain enters an opening in the roof created by the wind. To construe the policy as providing coverage only because the insured's property was damaged and the insured was not negligent would amount to enlarging the coverage of the policy from "named perils" to "all risks". The clear and unambiguous terms of the policy will not permit such a construction.
*55 In order to avoid the effect of the above quoted portion of the policy the Carters also claimed coverage under the "falling objects provision" of the unscheduled personal property endorsement. They urge that rainfall should be considered as being within the general definition of a falling object and that since there is no specific exclusion under the "falling object provision" then the only requirement that exists to afford coverage is that the falling object first penetrate the roof or walls and then cause damage to the personal property within the dwelling. We have heretofore held that a court will not distort the definitions of words that are utilized in the normal course of the English language in order to impose liability by reason of an insurance contract. Navarra v. Central National Ins. Co. of Omaha, 232 So.2d 28 (Fla.1st DCA 1970) cert. den. 237 So.2d 753 (Fla. 1970). It would be absurd indeed for us to hold under the terms of the subject policy, the parties or either of them ever intended that ordinary rain be construed as a "falling object" within the meaning of that term as used in the policy.
The partial summary judgment here appealed is reversed and the case is remanded to the trial court with directions to enter summary judgment in favor of the defendant insurer on the motion filed by it.
It is so ordered.
ERVIN and MILLS, JJ., concur.