[No. B056315. Second Dist., Div. One. May 12, 1993.]

BAO TAN DIEP, Plaintiff and Appellant, v.
CALIFORNIA FAIR PLAN ASSOCIATION, Defendant and Respondent.

COUNSEL

Eugene Button for Plaintiff and Appellant.

Cummins & White, Francis X. Sarcone, Michael M. Bergfeld and Kent M. Bridwell for Defendant and Respondent.

OPINION

**ORTEGA, Acting P. J.**—We affirm the trial court's grant of summary judgment to the defendant.

BACKGROUND

Plaintiff Bao Tan Diep, doing business as Maxim's Mattress Co., housed his business in a warehouse, which was covered by an insurance policy issued by defendant California Fair Plan Association. Plaintiff leased the property from Wendy and Allen Hart. The Harts contracted with Gruver Construction to repair the roof. Gruver removed a portion of the roof and covered the opening with plastic sheeting. According to plaintiff, during two rain storms, "the plastic sheeting was blown open, rain entered and flooded the property, causing extensive damage to appellant's warehoused mattresses."

Plaintiff sued the Harts and Gruver, and later amended to add defendant. Plaintiff secured an arbitration award against the Harts and Gruver, which has been satisfied. The Harts and Gruver are not party to this appeal.

Defendant sought summary judgment on two grounds, that failure to give proper and timely notice of the claim defeated coverage, and that since the plastic sheeting did not constitute a "roof," the policy did not cover the occurrence. Although the trial court granted summary judgment on the first ground, we affirm on the second.

## STANDARD OF REVIEW

After examining the facts before the trial judge on a summary judgment motion, an appellate court independently determines their effect as a matter of law. (*Bonus-Bilt, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357].)

Despite this independent review, the appellate court applies the same legal standard as did the trial court. Code of Civil Procedure section 437c, subdivision (c), requires the trial court to grant summary judgment if no triable issue exists as to a material fact, and if the papers entitle the moving party to a judgment as a matter of law. Emphasizing triable issues rather than disputed facts, summary judgment law turns on issue finding rather than issue determination. (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441-442 [116 P.2d 62].)

The appellate court must examine only papers before the trial court when it considered the motion, and not documents filed later. (*Wiler* v. *Firestone Tire & Rubber Co.* (1979) 95 Cal.App.3d 621, 627 [157 Cal.Rptr. 248].) Moreover, we construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

The trial court's stated reasons supporting its ruling, however, do not bind this court. We review the ruling, not its rationale. (*Barnett* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].)

## DISCUSSION

We find ourselves in the unusual position of discussing and disagreeing with a case which the state Supreme Court has ordered depublished (*Mitchell*

v. *California Fair Plan Association\** (Cal.App.) (hereafter *Mitchell*). In *Mitchell*, Division Three of this district ruled on the identical roof/plastic sheeting issue involving the same insurer. *Mitchell* found the term "roof" in the insurance policy ambiguous, construed it against the insurer and in favor of coverage, and ruled that, under the circumstances, plastic sheeting constituted a roof for purposes of the insurance policy. The case was ordered published. However, the California Supreme Court decertified *Mitchell* consigning it forever, but for this brief reemergence, to limbo. Nevertheless, plaintiff asks us to follow *Mitchell*, applying the principle of collateral estoppel, to prevent defendant from relitigating the same issue it lost in *Mitchell*. We decline to do so and reach the merits of the instant appeal.

The policy provides, in relevant part, that the "Company shall not be liable for loss to the interior of the building(s) or the property covered therein caused: [¶] (1) by rain, snow, sand or dust, whether driven by wind or not, unless the building(s) covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct action of wind or hail and then shall be liable for loss to the interior of the building(s) or the property covered therein as may be caused by rain, snow, sand or dust entering the building(s) through openings in the roof or walls made by direct action of wind or hail[.]"

█ If the plastic sheeting constituted a roof, coverage ensues, because it is undisputed that the wind blew the sheeting open, allowing the rain to enter and cause the damage.

While "roof" has many different meanings, (e.g., roof of the mouth) dictionary definitions are consistent with respect to that which people usually expect to find on top of a building. The Random House College Dictionary (1982) defines roof as "the external upper covering of a house or other building." (At p. 1145.) Webster's Third New International Dictionary (1976) defines it as "the outside cover of a building or structure including the roofing and all the materials and construction necessary to maintain the cover upon its walls or other support[.]" (At p. 1971.) The American Heritage Dictionary, Second College Edition (1982) defines it as the "exterior surface and its supporting structures on the top of a building." (At p. 1070.)

We could go on, but a roof is commonly considered to be a permanent part of the structure it covers. "Roof" is not an ambiguous or vague word. The plastic sheeting was used here because part of the roof had been

---

\*Reporter's Note: Opinion (B036881) deleted upon direction of Supreme Court by order dated September 7, 1989.

removed. The breach in the roof was not caused by wind or hail, but by the workmen who removed that portion of the roof needing repair. The construction contract said, "This building requires the removal of the roofing of a quarter of the building." It provided that in case of rain, Gruver would "place plastic sheeting on the open area of the roof." *Mitchell* notwithstanding, everyone connected to this project, including the insured, realized part of the roof was missing, and could not have considered the plastic sheeting constituted anything other than a nonstructural band-aid. The parties to the insurance contract could not have originally intended the result plaintiff seeks here.

*Mitchell* cited, but declined to follow, two cases, one from Mississippi (*Camden Fire Ins. Ass'n* v. *New Buena Vista Hotel Co.* (1946) 199 Miss. 585 [24 So.2d 848]), the other from Florida (*New Hampshire Ins. Co.* v. *Carter* (Fla.Dist.Ct.App. 1978) 359 So.2d 52).

In *Camden*, the insured contracted to have a portion of his roof repaired. The workmen opened a 12- by 46-foot hole in the roof. A storm came out of nowhere. The workmen tried to cover the hole with felt, "even casting themselves upon it" to keep it from blowing away. The policy had a similar provision to the instant policy, that the insurer would be liable only for damage " 'caused by water or rain entering the building through openings in the roof or walls made by the direct action of the wind.' " (*Camden Fire Ins. Ass'n* v. *New Buena Vista Hotel Co.*, *supra*, 24 So.2d at p. 849.) The Mississippi Supreme Court, in holding for the insurer, held that the "repairmen opened up the hole in the roof here,—not the windstorm. The water entered the interior of the building through the opening made by these workmen . . . . [¶¶] To be, or become, a roof, its construction or reconstruction must have reached the point where a reasonably prudent householder would consider it, if left in that condition for a month or months, or longer, as adequate against all risks of wind and rain which could be reasonably anticipated as likely to happen according to the general and recurrent experiences of the past,—but not including any extraordinary or unprecedented eventuality. . . ." (*Id.* at pp. 849-850.)

General and recurrent experiences of the past in Southern California include, in spite of periodic drought, wind and rain storms. No reasonably prudent building owner or lessee would have considered plastic sheeting adequate protection for any length of time.

In *New Hampshire*, the insureds "had removed the shingles from the roof of the subject dwelling and had partly covered the wood decking with tar paper in anticipation of placing new roofing materials on the roof when a rain storm occurred." (*New Hampshire Ins. Co.* v. *Carter*, *supra*, 359 So.2d at

p. 53.) Their policy contained a provision similar to that found in *Camden* and here. The insurer paid for the damage to the building, but denied coverage for water damage to the contents of the house. Citing *Camden*, the Florida District Court of Appeal ruled for the insurer, holding that "the rain leaked through the roof solely because the [insureds] had removed the protective covering of the shingles." (*New Hampshire Ins. Co. v. Carter, supra*, 359 So.2d at pp. 53-54.) Any "damage" to the roof allowing rain to enter was done not by wind or hail, but by the insureds.

A contrary holding is found in *Homestead Fire Ins. Co. v. De Witt* (1952) 206 Okla. 570 [245 P.2d 92], where the policy had been taken out specifically to cover the construction of an addition to a school. "[I]n the construction of the addition it was necessary that the roof thereof be tied into and joined with the roof of the school building previously erected or existing[.]" (245 P.2d at p. 93.) While the policy had the standard wind-water damage exclusion, it also covered "materials, equipment, supplies and temporary structures of all kind, incident to the construction of said building[.]" (*Ibid.*) Under the circumstances, the Oklahoma Supreme Court held that "it was in the contemplation of the parties . . . to cover all risks incurred . . . in connection with the construction of the addition . . . . [¶] . . . [¶] [T]he opening in the roof was necessarily made in order that the roofs of the two buildings might properly be tied together, and . . . this opening was covered by a temporary *roof* of canvas" through which came the damaging rain. (*Id.* at p. 94, italics added.)

We are persuaded by *Camden* and *New Hampshire* that, under the circumstances of the instant matter, the word "roof" could not have been reasonably construed by the parties to include a temporary cover of plastic sheeting. Unlike *Homestead*, the policy here was not issued specifically to insure against the hazards of construction and did not cover all materials incident thereto. While we don't necessarily agree with *Homestead*, the coverage there contemplated an on-going construction of considerable magnitude, and, in that light, the reviewing court gave the policy a broader interpretation.

Here, the parties knew the structure would be without a roof for a short time. Indeed, as respondent points out, plaintiff, responding to an interrogatory asking whether he contended the plastic sheeting was inadequate, answered, in part, "[Plaintiff] relied upon Gruver to do what was required to protect plaintiff's property while the roof was stripped during the rainy season. Plaintiff had no knowledge that Gruver had removed the roof without first obtaining an approved plan for replacement of the roof." Plaintiff clearly, as in *Camden*, did not, "consider [the plastic sheeting], if

left in that condition for a month or months, or longer, as adequate against all risks of wind and rain." (*Camden Fire Ins. Ass'n* v. *New Buena Vista Hotel Co.*, *supra*, 24 So.2d at p. 850.)

"To construe the policy as providing coverage only because the insured's property was damaged and the insured was not negligent would amount to enlarging the coverage of the policy from 'named perils' to 'all risks.' The clear and unambiguous terms of the policy will not permit such a construction." (*New Hampshire Ins. Co.* v. *Carter*, *supra*, 359 So.2d at p. 54.) In the context of this building and this policy, plastic sheeting is not a roof. The opening to the interior of the building was not caused by wind or hail, but by workmen. The policy, by its terms, did not cover the occurrence.

We reject plaintiff's argument that collateral estoppel prevents defendant from relitigating the *Mitchell* issue. "Generally the objective of res judicata and its affiliate collateral estoppel, is to prevent 'vexatious litigation with its attendant expense both to the parties and the public.' [Citation.] Where this objective will not be aided by application of these doctrines, and assertion thereof would 'defeat the ends of justice or important considerations of policy,' they may not be invoked. [Citations.]" (*O'Connor* v. *O'Leary* (1967) 247 Cal.App.2d 646, 650 [56 Cal.Rptr. 1].) We will not apply collateral estoppel to prevent us from disagreeing with an unpublished case we find unpersuasive.

In light of our resolution of the matter, we need not reach the issue of whether plaintiff's failure to give required notice defeated coverage. We have reviewed the trial court's ruling, not its rationale (*Barnett* v. *Delta Lines, Inc.*, *supra*, 137 Cal.App.3d at p. 682) and find summary judgment was properly granted.

## DISPOSITION

The judgment is affirmed.

Vogel (Miriam A.), J., and Masterson, J., concurred.