707 A.2d 1383

VICTORY PEACH GROUP, INC., PLAINTIFF–RESPONDENT/ CROSS–APPELLANT, v. GREATER NEW YORK MUTUAL INSURANCE COMPANY, DEFENDANT–APPELLANT/ CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 17, 1998—Decided April 6, 1998.

---

Before Judges CONLEY, WALLACE and CARCHMAN.

*Bruce E. Barrett,* argued the cause for appellant/cross-respondent (*Margolis Edelstein,* attorneys; *Mr. Barrett,* on the brief).

*Michael F. Chazkel,* argued the cause for respondent/cross-appellant (*Chazkel & Associates,* attorneys; *Mr. Chazkel* and *Thomas A. Chaseman,* on the brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

In 1991, plaintiff insured, Victory Peach Group, Inc. (Victory Peach), owned and operated a motor inn in Springfield. On November 10, 1991, the property was insured by defendant Greater New York Mutual Insurance Company (Greater New York) under a commercial property insurance policy entitled "Protecto-Guard Policy." On that day, the property sustained damage as a result of a storm during which rain entered the interior through the roof which was being repaired. Greater New York denied coverage; Victory Peach filed a declaratory judgment action. The coverage and damage issues were bifurcated. On May 19, 1995, a judgment of liability was entered and, following the vacation of a default judgment of $205,847.60 plus $53,545.74 prejudgment interest by order entered September 16, 1996, a jury returned a verdict for $100,000 in damages. Final judgment was entered in favor of Victory Peach for that amount plus $26,215.07 prejudgment interest. Greater New York appeals the May 19, 1995 order for judgment on liability; Victory Peach cross-appeals from the September 16, 1996 order vacating the default judgment.

On appeal, Greater New York contends:

POINT I. A TARP TEMPORARILY PLACED OVER AN OPENING IN THE ROOF MADE BY THE INSURED DURING REPAIRS DOES NOT CONSTITUTE A ROOF AS A MATTER OF LAW AND, THEREFORE, THE POLICY'S LIMITATION OF COVERAGE UNDER SECTION C.1.c APPLIES.

POINT II. PLAINTIFF'S CLAIMS FOR DAMAGES TO PERSONAL PROPERTY ARE EXCLUDED UNDER SECTION B.2.j. AS SUCH DAMAGES WERE CAUSED BY RAIN TO PERSONAL PROPERTY IN THE OPEN.

POINT III. THE POLICY'S LIMITATIONS AND EXCLUSIONARY PROVISIONS SHOULD BE ENFORCED REGARDLESS OF ANY DISTINCTION BETWEEN "ALL RISK" AND "NAMED PERIL" POLICIES.

Victory Peach on its cross-appeal contends there was no excusable neglect to justify a setting aside of the default judgment.

As to the cross-appeal, we affirm the September 16, 1996 order vacating the default judgment on damages substantially for the reasons set forth by Judge Span in her September 13, 1996 oral decision. *See Parker v. Marcus*, 281 *N.J.Super.* 589, 592–93, 658 *A.*2d 1326 (App.Div.1995), *certif. denied*, 143 *N.J.* 324, 670 *A.*2d

1065 (1996). We note, moreover, that the total default judgment of $258,393.34 was premised upon unsworn estimates, without any findings as to their reasonableness. *Cf. Morales v. Santiago,* 217 *N.J.Super.* 496, 526 *A.*2d 266 (App.Div.1987).

We address Greater New York's appeal from the May 19, 1995 order for judgment on liability in favor of Victory Peach. Our consideration of the pertinent provisions of the policy, the particular circumstances of the damage sustained by Victory Peach's property, and the applicable law convinces us that Judge Span correctly concluded that the policy provided coverage for the damage.

Here is what occurred. Prior to November 10, 1991, Fred Murray, a principal of Victory Peach, had observed a few leaks in the interior of the building and had observed "seams [in the roof] that were open from the wind and, . . . from months of weather." The roof was a "rubbertex" material. He decided to repair the roof by building troughs on it to divert the water and assist in drainage. The troughs were created by making cutouts in the roof, relining the cutouts and securing them with the heat of a blow torch and then reseaming the roof. The repairs were not completed at the end of the day. In an effort to protect the seams that remained unfinished, three large, heavy, vinyl tarpaulins were placed over the troughs and nailed down to the roof using roofing nails and flat shingles. That night a rainstorm with high winds ripped off the tarpaulins and securing shingles. Rainwater entered the building and caused water damage to its interior and its contents.

The policy provides in pertinent part:

**A. COVERAGE**

We will pay for direct physical loss of or damage *to Covered Property* at the premises described in the Declarations *caused by or resulting from any Covered Cause of Loss.*

[Emphasis added.]

Coverage, then, depends upon whether the damaged property is "Covered Property" and whether the damage is "caused by or resulting from" a "Covered Cause of Loss."

As to whether property is "Covered Property," the policy provides in pertinent part:

> Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:
>
> a. **Building**, meaning the building or structure described in the Declarations, including:
>
> (1) Completed additions;
>
> (2) Permanently installed:
>
> (a) Fixtures;
>
> (b) Machinery; and
>
> (c) Equipment;
>
> (3) Outdoor fixtures;
>
> (4) Personal property owned by you that is used to maintain or service the building or structure or its premises, . . .
>
> . . .
>
> (5) If not covered by other insurance:
>
> (a) Additions under construction, alterations and repairs to the building or structure. . . .

Indisputedly, the building and its interior are covered properties. Additionally, the policy also includes as covered property repairs to the building. Facially, then, the policy provides coverage for "direct physical . . . damage" to the building and the roof repairs "caused by or resulting from any Covered Cause of Loss." Victory Peach's losses here resulted from damage to the repairs on the roof during the wind and rain storm which permitted rain to enter the interior of the building. Is this a "Covered Cause of Loss"?

As provided under the policy, "Covered Cause of Loss" means:

> RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
>
> 1. Excluded in Section B., Exclusions; or
>
> 2. Limited in Section C., Limitations; that follow.

The risk of damage from rain entering the building through weaknesses in the roof, however caused, would facially seem to be a "risk of direct physical loss," as would the risk of damages to the repairs from the wind and rain, regardless of whether the repairs were completed.

The parties dispute whether the language "Risk of Direct Physical Loss" makes the policy an "all-risk" policy or a "named peril" policy. An "all-risk" policy creates a "special type of insurance extending to risks not usually contemplated, and recovery under the policy will generally be allowed, at least for all losses of a fortuitous nature,[1] in the absence of fraud or other intentional misconduct of the insured, unless the policy contains a specific provision expressly excluding the loss from coverage." 43 *Am.Jur.2d Insurance* § 505 (1982). *See Kopp v. Newark Ins. Co.*, 204 *N.J.Super.* 415, 421, 499 *A.2d* 235 (App.Div.1985) ("the [s]pecial [m]ulti-[p]eril [p]olicy," unlike a named peril policy, extends to all fortuitous losses unless caused by fraud or intentional conduct or unless expressly excluded). *Cf. New Hampshire Ins. Co. v. Carter*, 359 *So.2d* 52 (Fla.Dist.Ct.App.1978) ("[t]o construe the policy as providing coverage only because the insured's property was damaged and the insured was not negligent would amount to enlarging the coverage of the policy from 'named perils' to 'all risk.'"). *Compare Pace Properties, Inc. v. American Mfrs. Mut. Ins. Co.*, 918 *S.W.2d* 883, 885–86 (Mo.Ct.App.1996) (policy insuring against "direct physical loss of or damage to Covered Property . . ." was an all-risk policy), *and Sunbreaker Condominium Assoc. v. Travelers Ins. Co.*, 79 *Wash.App.* 368, 901 *P.2d* 1079, 1081, 1086 (1995), *review denied*, 129 *Wash.2d* 1020, 919 *P.2d* 600 (1996) (finding the language "Covered Causes of Loss—Risks of Direct Physical Loss unless the loss is: Limited . . . or Excluded . . . ." creates an all-risk policy), *and Ariston Airline & Catering Supply Co., Inc. v. Forbes*, 211 *N.J.Super.* 472, 479, 511 *A.2d* 1278 (Law Div.1986) (policy which covered "all-risks of direct physical loss or damage" was an all-risk policy and not a "difference in conditions" policy), *with Symington v. Walle Mut. Ins. Co.*, 563 *N.W.2d* 400, 404 (N.D.1997) (where the insuring clause provided coverage for "direct physical loss of or damage to Covered Property . . . caused

---

[1] A fortuitous loss has been defined as one that, so far as the parties to the insurance contract are aware, is dependent on chance. 5 John Alan Appleman and Jean Appleman, *Insurance Law and Practice* § 3092 (Supp.1996–97).

by or resulting from any Covered Cause of Loss," the policy was not an all-risk policy). But as observed in *Ariston Airline & Catering Supply Co., Inc. v. Forbes,* " '[t]he label 'all risk' is essentially a misnomer. All risk policies are not 'all loss' policies; all risk policies ... contain express written exclusions and implied exceptions which have been developed by the courts over the years.' " 211 *N.J.Super.* at 479, 511 *A.2d* 1278 (quoting *Standard Structural Steel Co. v. Bethlehem Steel Corp.,* 597 *F.Supp.* 164, 191 (D.Conn.1984)).

■   The critical issue here, then, is whether the cause of Victory Peach's losses falls within a section B exclusion or section C limitation. In this respect, Greater New York contends that exclusion B.2.j. applies to Victory Peach's personal property loss. B.2.j. excludes loss or damage caused by or resulting from "rain, snow, ice or sleet to personal property in the open." In the context of this exclusion, the phrase "in the open" would mean to the reasonable insured being left exposed to the elements. Indeed, the dictionary meaning of "open" includes "the open air or the outdoors." *The Random House Webster's College Dictionary* 947 (1991). As the damaged property was located in the interior of the building, it was not left "in the open." Assuming that the unfinished repairs left some exposed seams in the roof, there is nothing in this record, such as it is, that would reasonably suggest there was a gaping hole which exposed the interior of the building openly to the elements. The damage to Victory Peach's personal property, then, is covered under the policy.

■   As to the damage to the building itself, Greater New York relies upon the limitation of coverage set forth in section C.1.c. That section reads:

We will not pay for loss of or damage to:

. . .

c.   The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, *unless:*

> (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters;....

[Emphasis added.]

Facially read, this provision limits coverage for loss or damage caused by rain; but it does not exclude it. Where the building sustains damage by a "Covered Cause of Loss" to its roof, allowing the rain to enter the interior, the resulting loss or damage will be covered. Thus, were the rain to have entered through the old defects in the roof observed by Mr. Murray and which necessitated the repairs, that would be a "Covered Cause of Loss."[2] Likewise, the entry of the rain through the unfinished repairs would seem to be a "risk of direct physical loss" and, thus, a "Covered Cause of Loss." No exclusions apply. The limitation cannot apply by its own terms, since the roof did sustain damage by a "Covered Cause of Loss."

We reject Greater New York's contention that the damage here was not to the roof, but rather just to the temporary repairs and that, therefore, there can be no coverage. First, since the repairs themselves are "covered property," the entry of the rain through the damage to those repairs would constitute a "Covered Cause of Loss" not subject to the limitation in C.1.c. at all. Second, we simply do not accept the factual proposition that the repairs to the roof made the roof something other than a roof. At the least, the provision is ambiguous.

Our conclusion that the policy provides coverage for Victory Peach's damages is fortified by the well established principles applicable to the interpretation of insurance policies. An insurance policy is interpreted according to its plain and ordinary meaning. *Ambrosio v. Affordable Auto Rental, Inc.*, 307 *N.J.Super.* 114, 120, 704 *A.*2d 572 (App.Div.1998). Ordinarily, we favor

---

[2] Section B does include an exclusion for weather conditions in B.3.a. However, the exclusion applies only "if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss or damage." We find no cause or event in B.1. that would apply here.

broad reading of coverage provisions and narrow reading of exclusionary provisions. *Jeffer v. National Union Fire Ins. Co. of Pittsburgh*, 306 *N.J.Super.* 82, 87, 703 *A.*2d 316 (App.Div.1997) (citing *Salem Group v. Oliver*, 128 *N.J.* 1, 4, 607 *A.*2d 138 (1992)). When the meaning of a phrase is ambiguous, the ambiguity should be resolved in favor of the insured, *Sparks v. St. Paul Ins. Co.*, 100 *N.J.* 325, 336, 495 *A.*2d 406 (1985), and in line with the insured's objectively reasonable expectations, *Princeton Ins. Co. v. Chunmuang*, 151 *N.J.* 80, 87, 698 *A.*2d 9 (1997) (recognizing the general principle that insurance policies are interpreted according to the objectively reasonable expectations of the parties). "Nonetheless, courts 'should not write for the insured a better policy of insurance than the one purchased,'" *Voorhees v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 175, 607 *A.*2d 1255 (1992) (quoting *Longobardi v. Chubb Ins. Co.*, 121 *N.J.* 530, 537, 582 *A.*2d 1257 (1990)), and exclusions are presumptively valid and will be given effect if "'specific, plain, clear, prominent, and not contrary to public policy.'" *Princeton Ins. Co. v. Chunmuang, supra*, 151 *N.J.* at 95, 698 *A.*2d 9 (quoting *Doto v. Russo*, 140 *N.J.* 544, 559, 659 *A.*2d 1371 (1995)). But the burden is on the insurer to bring the case within an exclusion or limitation. *Ibid.* Quite simply, Greater New York has not done so here.

Our analysis of the policy itself renders unnecessary any consideration of the three out-of-state cases upon which Greater New York substantially relies. We address those cases only briefly. All of them involve policies that contain language which limits damage to a building caused by rain to "actual damage" to the roof or walls by "the direct force of" or "the direct action of" the elements. *Diep v. California Fair Plan Ass'n*, 15 *Cal.App.*4th 1205, 19 *Cal.Rptr.*2d 591, 593 (Ct.App.1993); *New Hampshire Ins. Co. v. Carter*, 359 *So.*2d 52, 53 (Fla.Dist.Ct.App.1978); *Camden Fire Ins. Ass'n v. New Buena Vista Hotel Co.*, 199 *Miss.* 585, 24 *So.*2d 848, 849, *suggestion of error overruled*, 199 *Miss.* 585, 26 *So.*2d 174 (1946). In *Camden*, the roof of the insured was being repaired. During the repair process, the repairmen opened up a hole measuring 12 × 46 feet. Suddenly, a storm came upon them

and the repairmen attempted to nail layers of felt to the roof to cover the hole, even "casting themselves upon it," to protect the interior of the building from water damage. Observing that the opening in the roof was caused by the repairmen, and not, therefore, "direct[ly]" by the rain, and further considering the opening to be such as there to have been no "roof" at all and that, therefore, the "actual damage" was not sustained by the roof, the court concluded that the limitation applied. Similarly, in *Diep v. California Fair Plan Ass'n,* a portion of the roof was removed and the opening was covered with plastic sheeting. At some point during the repair process, rain storms occurred during which the plastic sheeting blew open. However, since the rain entered through the opening caused by the repairmen, not by "direct action" of the elements, and since it was not the roof that sustained the "actual damage," there was no coverage. A similar scenario occurred in *New Hampshire Ins. Co.,* leading the court to conclude that the damage to the roof was not the "direct action" of the elements, but rather that of the repairmen and, thus, not covered.

As we have said, the policies in these cases included provisions that covered losses caused by rain and other weather elements only if "actual damage" to the roof was sustained by "the direct force of" or "the direct action of" the elements. The policy here does not contain such language. *And compare Travelers Indem. Co. v. Rawson,* 222 So.2d 131 (Miss.1969); *Homestead Fire Ins. Co. v. DeWitt,* 206 Okla. 570, 245 P.2d 92 (1952).

Affirmed.