**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 28 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

INTERIOR SHUTTERS, INC.;
KERMIT CARTER,

      Plaintiffs-Appellants,

v.

VALIANT INSURANCE COMPANY,

      Defendant-Appellee.

No. 00-6122
(D.C. No. CIV-99-1675-A)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**  *

---

Before **BRORBY** , **KELLY** , and **LUCERO** , Circuit Judges.

---

      After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiffs-appellants appeal from the district court's grant of summary judgment to appellee Valiant Insurance Company (Valiant) on appellants' claims relating to non-payment of insurance proceeds. Appellants complain that Valiant failed to pay a claim filed by appellant Interior Shutters, Inc. (Interior) for water damage to property located at its building in Oklahoma City. They seek damages for breach of contract and bad faith. Appellant Kermit Carter, sole shareholder of Interior, also seeks damages for intentional infliction of emotional distress. We affirm the district court's grant of summary judgment.

Prior to August 6, 1997, Interior contracted with Contemporary Concepts to replace the roof of Interior's building in Oklahoma City. Interior's contract with Contemporary Concepts required Contemporary Concepts to remove the existing roof and to install a new one. During the work, Contemporary Concepts removed a portion of the roof. At the end of each day's work, they covered any open areas with a heavy plastic visqueen material and tar paper, held down along the edges by new roofing materials.

On August 6, 1997, about one-half of the old roof had been removed, and the resulting opening had been covered with plastic in this manner. On that date, a storm loosened the plastic covering, and rainwater damaged property inside the building. Valiant denied appellants' claim for the damage, reasoning that their policy with Interior only covered damage caused by rain if it were proceeded by

-2-

damage to the walls or roof of the structure resulting from a covered cause of loss. Valiant determined that the damage to the temporary plastic roof did not constitute damage to the "roof" of the building.

The district court adopted Valiant's position and granted summary judgment on appellants' breach of contract claim. It further found that Valiant had not acted in bad faith in denying the claim and rejected Carter's emotional distress claim.

We review the district court's order granting summary judgment de novo. Adams v. Am. Guarantee & Liability Ins. Co. , No. 99-1511, 2000 WL 1769123, at *3 (10th Cir. Dec. 1, 2000). Summary judgment is only appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A federal court sitting in diversity applies the substantive law . . . of the forum state." Signature Dev. Cos., Inc. v. Royal Ins. Co. of Am. , 230 F.3d 1215, 1218 (10th Cir. 2000) (quotation omitted). Under Oklahoma law,

> An insurance policy is a contract. If the terms are unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties. Whether an insurance contract is ambiguous is a matter for the court to determine as a matter of law. When an insurance contract is susceptible of two meanings, i.e. if it is subject to an ambiguity, the familiar rule of insurance contract interpretation applies and words of inclusion are liberally construed in favor of the insured and words of exclusion strictly construed against the insurer.

<u>Phillips v. Estate of Greenfield</u>, 859 P.2d 1101, 1104 (Okla. 1993) (citations omitted).

The insurance policy between the parties provides that Valiant will pay "for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Appellant's App. at 131. "Covered Property" includes among other things, "[a]dditions under construction, alterations and repairs to the building or structure," if not covered by other insurance. [1] <u>Id.</u> A "Covered Cause of Loss" covers "risks of direct physical loss," subject to certain exclusions and limitations. <u>Id.</u> at 142. One such limitation pertains to loss or damage to

> [t]he interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
>
> (1)    The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or
>
> (2)    The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

<u>Id.</u> at 146.

---

[1]    Although Interior recovered damages for the incident from Contemporary Concepts' insurance carrier, Valiant does not argue that this constitutes "other insurance" within the meaning of this policy provision.

This case thus turns on whether Interior's building sustained "damage by a Covered Cause of Loss to its roof" prior to the damage caused by the rain.    Id. The district court found that the term "roof" was not ambiguous and that it did not include a plastic sheet, even if that sheet was heavy and anchored with tar paper and roofing materials.  Appellants take issue with that determination; they argue that under Oklahoma law, a temporary "roof" of the type installed here constitutes a "roof" for purposes of insurance coverage.

In support of their argument, appellants cite    Homestead Fire Insurance Co. v. De Witt , 245 P.2d 92 (Okla. 1952).  In that case, the plaintiffs were contractors who entered into a construction contract with the City of Tulsa Board of Education to construct an addition to a school building.  In constructing the addition, it was necessary to join the roof of the new addition to the roof of the existing school building.  While the roofs were being joined, it was necessary to leave an opening in the roof of the old building.  In order to protect the old building, plaintiffs had placed canvas covers over the opening.  A wind storm arose and blew the canvas covering off, and the interior of the old structure was damaged by a rain storm accompanying the wind storm.

The insurance contract in the    Homestead  case provided coverage for materials, equipment, supplies and temporary structures incident to the construction of the building.  An extended coverage endorsement covered such

-5-

perils as wind storms, but included a limitation, similar to the one in question

here, providing that

> the company shall not be liable for loss to the walls of the building, or the insured property, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building insured or containing the property insured shall first sustain an actual damage to roof or walls by the direct force of the wind or hail.

Id. at 93.

> The Oklahoma Supreme Court stated:

> It was understood that as a part of the construction it would be necessary for plaintiffs to attach the roof of the new building to the roof of the old; that this operation was a necessary part of the work to be done by the plaintiffs, and that therefore the parties intended and contemplated that plaintiffs would be protected in that operation as well as in the actual erection of the walls and other portions of the new building.

Id. at 94.[2]  The court went on to hold that the limitation for wind storm damage

did not apply, because the opening in the roof was necessary and the temporary

roof of canvas was considered adequate by the contractors.        Id.

Appellants contend that    Homestead  is binding authority in this case, and

required Valiant to supply coverage.  We agree with the district court, however,

that Homestead  is distinguishable from the facts here.        Homestead  involved a

---

[2]      The court made this statement in the course of determining that plaintiffs had an insurable interest in the existing structure, and that the policy covered both the old and new portions of the structure.  However, its reasoning concerning the parties' intent extends also to its holding that the limitation involving wind storm damage did not apply.

policy issued specifically to cover risks associated with a construction project. The opening of the roof was a necessary part of that project, and one within the intent and contemplation of the parties. [3] There is no indication that the Oklahoma Supreme Court intended its holding in Homestead to require the extension of coverage to temporary roofs created by roofing work not undertaken under the aegis of a construction-related policy. The factual circumstances presented in this case differ considerably from those in Homestead.

The parties have cited no other Oklahoma authority directly bearing on this issue. To find authority closer on point that the Oklahoma courts would follow if presented with the factual scenario at issue here, it is necessary to turn to cases from other jurisdictions. Like the district court, we find persuasive the well-reasoned decisions in Diep v. California Fair Plan Ass'n, 19 Cal. Rptr. 2d 591, 593-94 (Cal. App. 1993); New Hampshire Ins. Co. v. Carter, 359 So.2d 52, 53-64 (Fla. Dist. Ct. App. 1978); and Camden Fire Ins. Ass'n v. New Buena Vista Hotel

---

[3] Although the policy at issue here defines "Covered Property" to include "[a]dditions under construction, alterations and repairs," Appellant's App. at 131, appellants fail to show that this provision brings their case within the ambit of Homestead. This case differs from Homestead because in Homestead the very purpose of the insurance was to cover construction and it was the parties' intent to include replacement of the roof. There was no such intention shown here. See New Hampshire Ins. Co. v. Carter, 359 So.2d 52, 54 (Fla. Dist. Ct. App. 1978) (stating it was not reasonable to construe provision allowing homeowners to make repairs to expand coverage to any and all risks, such as wind blowing away a temporary roof allowing rain to enter, occasioned by the repairs).

Co., 24 So.2d 848, 850 (Miss.) (en banc), suggestion of error overruled, 26 So.2d 174 (Miss. 1946). In each case, the courts construed similar policy provisions to hold that a "roof" does not include a temporary structure such as the plastic sheeting involved here.

Appellants refer us to their district court summary judgment briefs for opposing authorities supporting their position. This comes perilously close to incorporating arguments made in the summary judgment briefs by reference, a procedure we strongly disapprove of and one which generally results in waiver of the argument. See Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 623-24 (10th Cir. 1998). In any event, the authorities cited in appellants' district court briefs are less persuasive than those cited by the district court.

Appellants cited Mitchell v. California Fair Plan Ass'n, 260 Cal. Rptr. 3 (Cal. App. 1989), for example, which holds that plastic sheeting could constitute a roof for purposes of policy provisions similar to those at issue here. Unfortunately for appellants, however, Mitchell has been decertified (ordered "depublished") by the California Supreme Court and lacks precedential value. See Diep, 19 Cal. Rptr. at 592-93 (stating the California Supreme Court "consign[ed Mitchell] forever . . . to limbo").

Appellants also cite Victory Peach Group, Inc. v. Greater New York Mutual Insurance Co., 707 A.2d 1383 (N.J. App. 1998). In that case, the Superior Court

of New Jersey, Appellate Division reasoned that repairs to a roof, including vinyl tarpaulins blown off by high winds, should be considered part of the "roof" for purposes of determining whether a commercial property had sustained damage through a covered cause of loss to its roof. We do not find the reasoning of Victory Peach persuasive in this case. The holes in the roof through which water entered in that case were unfinished seams rather than gaping holes as in this case. See id. at 1384.

The court in Victory Peach also attempted to distinguish Diep, Carter, and New Buena Vista, on the basis that the policies in those cases required "actual damage" to the roof or walls by "the direct force of" or "the direct action of" the elements. Id. at 1387. This is a distinction without a difference, however, as the focus in cases like this is not on whether there was "actual damage," but rather whether what was damaged was a "roof." That question is carefully and comprehensively addressed in Diep, 19 Cal. Rptr. 2d at 593, which concluded that plastic sheeting does not qualify as a "roof" for purposes of the damage limitation.

As did the district court, we will follow the well-reasoned authorities of Diep, Carter, and New Buena Vista and conclude that the term "roof" as used in the policy is unambiguous, and does not include the plastic sheeting that blew off Interior's building. Interior has failed to show that it incurred a Covered Cause of

Loss that was not subject to the policy limitation for damage caused by rain. The district court properly granted summary judgment to Valiant on appellants' breach of contract claim.

One additional point remains to be considered before this case is complete. Appellants argue that if we reverse summary judgment on their breach of contract claim, we should also reverse summary judgment on their bad faith and emotional distress claims. Since they phrase their argument in this manner, and since we have affirmed rather than reversed summary judgment on the breach of contract claim, we also affirm the district court's grant of summary judgment on the remaining two claims.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge